NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220428-U

NO. 4-22-0428

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 22, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.B., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 22JA3 |
| v. | ) | |
| Diana B., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the dispositional finding that respondent
                was unfit and unable to care for the minor was not against the manifest weight of
                the evidence.

¶ 2    Respondent mother, Diana B., appeals from a dispositional order entered in a
juvenile dependency case involving her daughter, L.B. (born January 14, 2006). On appeal,
respondent argues the dispositional finding that she was unfit and unable to care for the minor is
against the manifest weight of the evidence. We disagree and affirm.

¶ 3                                      I. BACKGROUND

¶ 4    Respondent and Kevin B. are the minor's parents. The record reflects the minor's
parents live in McLean County, have never married, and are not in a relationship. The record also
reflects the minor resided with respondent prior to the instant proceedings.

¶ 5           A. Petition for Adjudication of Dependent and Temporary Custody

¶ 6           In January 2022, the State filed a petition for adjudication of dependency, alleging the minor was a dependent minor as defined by sections 2-4(1)(b) and 2-4(1)(c) of the Juvenile Court Act of 1987 (705 ILCS 405/2-4(1)(b), 2-4(1)(c) (West 2020)) in that (1) respondent's mental and physical health made it unsafe for the minor to be in her care and (2) the minor's behavior was beyond the control of respondent. That same month, the trial court conducted a shelter-care hearing. Respondent, despite being advised of the hearing, did not appear. The minor's father appeared at the hearing. The court received for its consideration multiple incident reports involving respondent and the minor that spanned several years. Based on the information before it, the court found probable cause to believe the minor was dependent and it was a matter of immediate and urgent necessity she be afforded shelter care. The court placed temporary custody of the minor with the Department of Children and Family Services (DCFS).

¶ 7           B. Adjudicatory Hearing

¶ 8           In March 2022, the trial court conducted an adjudicatory hearing. Respondent, despite being advised of the hearing, did not appear. The minor's father appeared at the hearing. The State moved for the court to find respondent in default and provided the following proffer:

> "[T]he State would offer evidence that [respondent] has both long-term health concerns and mental health issues, as documented in previously filed Incident Reports from McLean County. Those are 201136837, 201401901, 201814698, 201814715[,] and 202015957.
>
> On January 6th of 2022, the minor and [respondent] were involved in a physical altercation where [respondent] pulled the

minor's hair and the two of them fell to the ground. Both DCFS and Project Oz attempted to keep and help with the minor remaining in the home, but [respondent] refused to allow the minor back in the home."

The court found respondent in default and the existence of sufficient information from the proffer to establish the allegations of dependency. The court adjudicated the minor dependent and scheduled a dispositional hearing.

¶ 9                                C. Dispositional Hearing

¶ 10          In May 2022, the trial court conducted a dispositional hearing. Both respondent and the minor's father appeared at the hearing. Over no objection, the court received for its consideration a dispositional report. The following is gleaned from the dispositional report.

¶ 11          Respondent resided in a three-bedroom home and was receiving mental health treatment. Respondent would not cooperate with signing consents for the release of her health records. The records were eventually obtained pursuant to a subpoena. The records totaled 10,555 pages and detailed "a very extensive history of both mental health and medical treatment with multiple diagnoses." In January 2022, respondent was involuntarily hospitalized for suicidal ideation, agitation, and aggression. Respondent participated in an interview for the purposes of an integrated assessment. By the end of the interview, respondent was "very agitated." Limited information was obtained from respondent during the interview.

¶ 12          The minor's father lived in a one-bedroom apartment. He had been cooperative since the minor was taken into DCFS care. He participated in an interview for the purposes of an integrated assessment. He appeared to be open and honest during the interview. The minor's father had a history of criminal activity and substance abuse, but he had been sober for many years and

completed necessary treatment. He reported having a new outlook on life following an accident in which he almost lost his life. He was not receiving any services.

¶ 13        The minor, who was a sophomore in high school, was placed with her paternal grandmother upon being taken into DCFS care. Since being taken into DCFS care, the minor's schoolwork had improved and she had been receiving counseling and psychiatric treatment. The minor refused to have any contact with respondent. She believed her mother had a negative impact on her mental health and increased her anxiety and depression symptoms. The minor explained that since being removed from respondent's care, she could "be a normal teenager rather than a caretaker for [respondent]." The minor began visitations with her father immediately after she was taken into DCFS care. Visitations transitioned from supervised to unsupervised. She had two overnight weekend visitations with her father. Following the second weekend visitation, DCFS placed the minor with her father. The minor's father attended the minor's school meetings and doctors' appointments. In addition, he made a point to get to know the parents of the minor's friends. The minor repeatedly expressed a desire to reside with her father.

¶ 14        The author of the dispositional report, who had been the assigned case manager since the case was opened and who had the opportunity to meet with respondent, the minor's father, and the minor, believed it was "evident that [respondent's] many mental health and medical diagnoses impact[ed] her ability to safely and appropriately parent," and it would not be in the minor's best interests to "return to her care." Conversely, the author of the dispositional report believed, despite residing with her father for a short time, it would be in the minor's best interest to continue to be in the care of her father.

¶ 15        Based on the information gleaned from the dispositional report, the court made the minor a ward of the court, found respondent unfit and unable to care for the minor, found the

minor's father fit, able, and willing to care for the minor, placed custody of the minor with the minor's father, and placed guardianship of the minor with both of the minor's parents. With respect to its finding that respondent was unfit and unable to care for the minor, the court indicated its finding was based on respondent's "long-term mental health issues and medical diagnoses that significantly impact her ability to safely and appropriately parent the minor." Thereafter, the court terminated the wardship and closed the case.

¶ 16    This appeal followed.

¶ 17                              II. ANALYSIS

¶ 18    On appeal, respondent argues the trial court's finding that she was unfit and unable to care for the minor is against the manifest weight of the evidence. In support of her argument, respondent notes she was receiving mental health treatment and her mental health was stable. In addition, respondent complains about the absence of "sworn testimonial evidence" at the dispositional hearing. The State, in response, asserts the court did not commit any error.

¶ 19    After a minor is made a ward of the court, the trial court is tasked with determining a disposition best serving the minor's interest. 705 ILCS 405/2-22(1) (West 2020); *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 40, 73 N.E.3d 1178. Among the possible dispositions, the minor may be (1) restored to the custody of the minor's parent (705 ILCS 405/2-23(1)(a)(1) (West 2020)), or (2) placed in the custody of the minor's other parent (705 ILCS 405/2-23(1)(2), 2-27(a)(1)(a) (West 2020)). A court may not restore custody to a parent whose child has been adjudicated dependent based on the acts or omissions of that parent unless the court determines, after a hearing, the parent is fit to care for the child. 705 ILCS 405/2-23(1)(b) (West 2020).

¶ 20    "[A] trial court's decision 'will be reversed only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an

inappropriate dispositional order.' " *Al. S.*, 2017 IL App (4th) 160737, ¶ 41, 73 N.E.3d 1178 (quoting *In re J.W.*, 386 Ill. App. 3d 847, 856, 898 N.E.2d 803, 811 (2008)). "A court's factual finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where its finding is unreasonable, arbitrary, or not based on the evidence presented." *Al. S.*, 2017 IL App (4th) 160737, ¶ 41.

¶ 21        We initially reject respondent's complaint about the absence of "sworn testimonial evidence" at the dispositional hearing. Not only does respondent raise her complaint for the first time on appeal, but she also raises it without the citation to any supporting authority or reasoned argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Moreover, there is no requirement of "sworn testimonial evidence" at a dispositional hearing. See 705 ILCS 405/2-22(1) (West 2020) ("All evidence helpful in determining [dispositional] questions, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing."); *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 56, 143 N.E.3d 680 ("[T]he rules of evidence are substantially relaxed at a dispositional hearing.").

¶ 22        We further reject respondent's argument that the trial court's finding that she was unfit and unable to care for the minor is against the manifest weight of the evidence. The evidence presented at the dispositional hearing shows: (1) respondent would not cooperate with signing consents for the release of her health records; (2) respondent became "very agitated" during the interview for the integrated assessment and provided limited information; and (3) the author of the report, who had been the assigned case manager since the case was opened and had the opportunity to meet with respondent and the minor, believed respondent's "many mental health and medical diagnoses impact her ability to safely and appropriately parent." Given the information gleaned

from the evidence presented, we conclude the dispositional finding that respondent was unfit and unable to care for the minor is not against the manifest weight of the evidence.

¶ 23                                    III. CONCLUSION

¶ 24          For the reasons stated, we affirm the trial court's judgment.

¶ 25          Affirmed.